Good morning, Your Honor. Good morning, Counsel. I'm Mark Williman on behalf of Jesus Alberto Ramirez-Robles. Your Honor, as it pleases the Court, I'll take questions at this time. If not, I'd like to reserve the remainder of my time for rebuttal, Your Honor. That's all I have. Thank you. Thank you. Mr. Berry, you're arguing a little bit sooner than you thought you would be. I happen to know you've been there long enough, though, to get settled in this seat. Good morning, Your Honors. Patrick Berry, representing the United States in this matter. There were two issues that were raised by the defendant after a jury trial. The first issue was whether a purported videotape was destroyed in bad faith. The trial court was correct in ruling and denying the defendant's motion to dismiss because the burden is on the defendant to show that the evidence was destroyed in bad faith, where the evidence is arguably exculpatory. In this case, Mr. Williman, in his brief several times, makes the argument that the tape was exculpatory, or that the judge found that the tape was actually exculpatory, where on several occasions in the record, at least three to my count, the judge actually found that it was arguably exculpatory, not exculpatory. And actually, Mr. Williman admits that at the time that that tape was destroyed, there was no way that the authorities could have known that the tape itself was exculpatory. Was this before he was arrested or detained? Well, Your Honor, there were a couple stories of how he entered the country. One story was that he came through, during trial, that he came through the defense of Nogales. The story that was given at the suppression hearing was that he came through the port of entry with doctor's documents. Now, there is video surveillance at the port of entry that is fed into a central command center, that that central command center is monitored by two or three people, and it's constantly recorded on a hard drive, which, in the regular course of business, tapes over itself every ten days, without any human interaction at all. It just automatically tapes over. Tapes can be saved if someone makes a call, or if some of the people monitoring the tape itself believe that it's something that may need to be used down the line. Well, in this case, according to his story, he just came through, showed a doctor's document, and walked through the port, just like everyone does all day. There's no way that the government could possibly know that it was exculpatory. His story is that that happened on April 30th. He was only encountered by police in this country on June 19th, long after that tape was destroyed, and actually was only charged in this matter in August. So, there's no possible way that the government could have known, and under Trombetta, before the tape was destroyed, the government would have to know that it was actually exculpatory. There's no way that that could possibly be done. In addition to that, you have young blood, which added the bad faith requirement, and there's absolutely no evidence in the record, and the trial court found no evidence that there was bad faith. Mr. Berry, the claim is that the border guard waved him through because he had a note saying his mother was quite ill. Yes, Your Honor. Would that be a sufficient permission by the Attorney General, even if it were so? No, it would not, Your Honor, and the trial court actually found that. You must actually apply for admission before you come to the port of entry, and get permission to reapply to come in. But there's that quaint requirement that it would be in writing. Yes, Your Honor. And that was never done. As the trial court said, just because you may go up and fool a border guard is not enough to say that you reapplied for admission. If there are no other questions on that issue, I'll move on to the next one. Right. The other issue that was raised was that whether the government was required to prove at trial that the defendant was free from official restraint. The trial court denied the defendant's Rule 29 motion because the – in this case, the government presented sufficient evidence for the jury to conclude the defendant was found in the United States. The court found that there was no requirement in this case that the government show official restraint or make any demonstration of official restraint. There was no evidence that the defendant was under surveillance the entire time he had come into the country. He was turned on. In fact, the only evidence at trial of when he came into the country was his own admission that he had come into – and again, he was apprehended or turned over to Border Patrol on June 19th. The only admission by – the only evidence at trial as to when he came into the court was that his admission that it was sometime in early May. So it was one and a half months after he was in the country that he was turned over to – over to Border Patrol. I thought you said he came in on April 30th. Well, that was the testimony – that was the testimony that was presented at the suppression hearing. There was absolutely no evidence of that presented during trial. The only evidence presented during trial was his admission that he came in in early May. So that he would have to show – to show he was not free from official restraint. He would have to show that he was being surveilled from April 30th or early May through June 19th. That's my position, Your Honor. He – he in fact – he was – what happened was on June 19th, the Nogales police called Border Patrol and said we're holding what we absolutely – again, absolutely no evidence he was under – under surveillance for the entire time, that entire month and a half that he was in the country by his own admission. Did he – he didn't testify, did he? He did not testify. There was – and as – again, there was no evidence on cross-examination and no evidence – and he presented no evidence that in any way he was under – under official surveillance. And therefore, I believe the jury to conclude that he was found in the United States. Thank you very much. I have no further questions. Thank you. Any further questions? No questions. Mr. Willimon. You're taking me back, Mr. Willimon, to the Hall of Justice, because there counsel – the defense counsel would always wave opening argument and reserve rebuttal. That's okay. Go ahead. I'll take what Mr. Verri said in reverse order, if I might. As I understand the posture of our laws in the United States, at the time my client was arrested and the government's first witness testified, the agent – the officer, Officer Huerta from Nogales Police Department is the one who made the arrest. It's Mr. Ramirez position that that officer needed to testify to prove what Mr. Verri says is overwhelming evidence, that he was not in official constraint. But the evidence at trial is the first person who testified was the government agent who found my client in official constraint. He was in the Nogales Police Department's control when the first witness who testified at trial – Are you here as an officer of a court representing to us that he was not in the United States? That's not my representation, Your Honor. My representation is that – Does the record show that he was? The record does show that he was in the care and control of the Nogales Police Department. Other than in the care and control of Nogales Police Department. No, there was no evidence presented at trial that he was – So in other words, it's your testimony – I mean, your position as an officer of the court that he only entered the United States just before he was detained by Nogales? No, that's not my position, Your Honor. It is my – It worries me when counsel would stake his reputation to cover a client. I'm not staking any reputation, Judge Beyer. What I'm saying is that – It certainly sounds that way from your argument, as I understand it. Now, maybe I don't understand it. The argument is basically – That he was in custody from the time he entered this United States until the total time he was in the United States, he was in custody. Isn't that the position that's represented to us? No. That is not my – What is the position that's represented to us? The government was required to prove my client was free from official constraint. In that, the government was required to bring Officer Huerta in to testify to the jury. It's the jury who determines this. I believe that there was not sufficient evidence presented to the jury that said that the defendant was free from official constraint. The only two statements, and Mr. Berry makes reference to it, are contradicting statements that were made to the – to two different Border Patrol agents. One of them made on or about the 21st of June that said, I came in on the east side of Nogales illegally. The second one was made in August 21 with a doctor's note that says, I came through the port of entry with a doctor's note. In fact, we have a doctor's note and we have unrefuted testimony that he did come through the port of entry. Well, if he did come through the port of entry with a doctor's note and was waved through – Correct. By the immigration officer, he came in April 30th and he wasn't arrested until June 19th. Correct. Isn't the burden of proof on you to show that he was in official restraint all that time? No. My burden is to prove – my burden is as soon as we show constraint, and the government has constraint here because my client was arrested by Nogales Police Department, isn't it incumbent upon the government to show that he was free from official restraint up until that point? Well, he – but your case is that he was waved through. When he was waved through, he was free from government restraint. I mean, you're riding two horses, right? I agree. But what's proven at trial, Your Honor, and what was argued before trial in an evidentiary hearing are two separate matters. I believe that the government still is put to their burden at trial. They have a burden to prove the elements at trial to a jury. What we argued prior to that is he was waved through as far as the video is concerned. No. They've got to prove that they found him in the United States. Correct. When they prove they found him in the United States, then your proof is that he was in official restraint from the time he entered the United States until he was found. Those are the border cases where they've got the binoculars on the lads as they come across the river. Correct. Okay. Mr. Barry references a case in his motion called United States v. Pargis Rojas. It's a San Diego case. In that case, the San Diego marshal was serving a warrant. He actually went to court and testified that the individual was free from official constraint. I'm saying that the same thing has to happen here, that the government is required to prove that the local agent, the local law enforcement officer, come in and testify that my client was free from official constraint. What we have at trial is the government coming in with a first witness saying, I found him in the care and custody of local law enforcement. Doesn't he have to be free from official Federal restraint? That's the district court's decision, Your Honor. When he had found him in Nogales Police Department, he was free from Federal restraint. That's the court's position. But as the court saw in United States v. La Villa out of the Third Circuit, in that situation, local law enforcement found the illegals on the beach, the indocuments on the beach, and they circulated. And the court said, using this court's ruling, that they were attempted, that they had not entered because local law enforcement had them held. Now, judge the district court judge held that the local law enforcement doesn't have official constraint. We challenge that with the La Villa decision, Your Honor. All right. Thank you very much. Thank you. Did you want to cover your second point? Oh. Or did you wait? No. I didn't realize I had any time left, judges. As far as the second issue is concerned, I would agree with the government that they destroyed the videotape before they knew the nature of it. The question then is, is the 10-day period to rewrite the video, is that ---- Isn't the burden what about it made it exculpatory? If the person actually waived the ---- if the Border Patrol agent waived the individual in, there's a defense that he had permission. And the reason for that is there's a defense, I think we all know about it, that if you act at the behest of ---- What is the requirement? To be honest with you, Judge, I don't know. I've tried to find the actual requirement. Maybe you will know after we write. I'm sure we will, Judge. Thank you. I think the requirement is that the Attorney General has to grant in writing permission to the previously deported alien to come into the country. It's as simple as that. Well, the notice of that requirement, Judge, I don't know if my client was ever given any notice that that's what was required. I think ---- He's given notice because that's the law of the country. I understand that. But the Attorney General or any of his agents, there's a whole list of people that we've mentioned that have been mentioned in the brief that can give permission to enter into the country. But nobody gave permission in writing. That's correct, Your Honor. So how do you get around that? I don't. You don't. Okay, fine. Okay. But the bottom line is, is that we had a video camera. I think the jury would have seen a Border Patrol agent waving that individual in. Well, that's an interesting point. Is your point that a videotape is a document and, therefore, is permission in writing by a duly licensed agent of the Attorney General? No. I don't believe that either. What I'm saying is that it comes to a jury, it goes to a jury just to show that my client had at least had some tacit or ersatz permission to come into the government by a waving of a document through. I was trying to throw you a lifeline. I know you were, Judge, and I appreciate it. I just can't bite it. I can't bite on that with all due honesty. But I just think that the government needs to keep those Border Patrol tapes for more than 10 days. Simply, I mean, just six months. I mean, we all have to keep records. The IRS makes me keep records for three, four years. The point I'm at, the problem I have with your argument is, assume they did and assume we had it. Yes. What would it show? All it would show, taking everything your client says is true, is some Border Patrol person reading his letter and giving him the wave to come through. Boy, I'm wasting my water here. So that doesn't meet the requirement. And so what is it worth? Nothing, is it? I think it is, Your Honor. I think it goes back to the point that if an individual has noticed that he could come in simply by being waved in by a Border Patrol agent, I think that gives him the – he doesn't know any better, Your Honor. He's got a fourth-grade education. What does he know? If he's being waved in by a governmental agent – He thinks all the legal agents – all he had to have was somebody at the border waving him through. That's what he was told by the embassy, Your Honor. I see. Thank you. Thank you, Your Honors. Have a good day. All right. The case of United States of America v. Ramirez-Robles will be submitted. Thanks, counsel, for your argument. And we will now turn to the next case, which is United States of America v. Michael Riley White.
judges: Farris, Bea, Siler